### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHAD C. O/B/O MINDY J. | § | |
| (DECEASED), | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:24-CV-2456-E-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Doc. 7, Plaintiff's appeal on behalf of Claimant of the denial of Claimant's application for Social Security disability benefits, Doc. 1, is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons outlined here, the Commissioner's decision should be **AFFIRMED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff Chad C., on behalf of Claimant Mindy J. (now deceased), seeks judicial review of the Commissioner's decision denying Claimant's applications for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act") and for supplemental security income under Title XVI of the Act. Doc. 1 at 1-2. Claimant filed her application in November 2021, alleging a period of disability beginning in June 2020, resulting from (1) chronic obstructive pulmonary disease ("COPD"); (2) muscle mass loss in both legs due to surgery; (3) abdominal cramping; (4) anal drainage; (5) severe depression and anxiety; (6) an

inability to stand for long periods of time; and (7) having to use a walker to ambulate. Doc. 13 at 5-6. The claim was denied at all administrative levels, and Plaintiff now appeals to this Court under 42 U.S.C. § 405(g).

### B. Factual Background

Claimant was 49 years old on her alleged disability onset date and had a high school education and an associate's degree in criminology. Doc. 10-1 at 83, 110-11, 295; Doc. 13 at 5-6. She had past relevant work as an administrative assistant, a buyer, an office manager, and a purchasing agent. Doc. 10-1 at 84-87, 282-89, 302-05, 309-20, 361-68; Doc. 13 at 6.

Claimant's medical history largely documents chronic gastrointestinal issues, difficulties walking and standing, COPD, and severe depression and anxiety. Doc. 10-1 at 72, 109, 295. Claimant also reported gastrointestinal difficulties (including, *inter alia*, chronic abdominal pain, diarrhea, nausea, and incontinence) in June, July, and November of 2020, at which time she underwent a laparoscopic sigmoid resection with primary colorectal anastomosis, rectopexy, and omental flap. Doc. 10-1 at 87-91, 455, 457, 1132, 1418, 1621; Doc. 10-2 at 178, 186-89; Doc. 10-5 at 213; 252, 977; Doc. 10-10 at 112. In December 2020, Claimant reported that she felt good and, by January 2021, represented that all symptoms had resolved. Doc. 10-7 at 253-63.

Starting later that year and continuing into August 2023, Claimant's reports to medical providers alternated between experiencing no adverse symptoms to experiencing severe gastric difficulties. Doc. 10-1 at 455-57; Doc. 10-2 at 178, 430-33; Doc. 10-4 at 220-38; Doc. 10-5 at 184, 210, 242, 275-77, 320; Doc. 10-6 at 319, 337; Doc. 10-7 at 117-18, 150, 332-33, 376; Doc. 10-10 at 82-83, 90, 418-19, 796. During the same period, Claimant's reports of her alcohol consumption (or lack thereof), appeared to coincide with the severity of her gastric symptoms. *See, e.g.*, Doc. 10-5 at 275-77, 318-20 (reporting consumption of 1-2 beers per day at the same

visit as reporting worsening abdominal pain); Doc. 10-5 at 326, 399 (noting that symptoms are "likely alcohol related"); Doc. 10-6 at 337 (same); Doc. 10-7 at 332-33 (reporting, during the same visit, that Claimant's diarrhea was better and that she was no longer drinking any alcohol).

During this same period, Claimant reported difficulties walking and standing, including the use a walker or wheelchair and having to be physically supported by her spouse when leaving home. Doc. 10-1 at 91, 302, 322, 329, 335, 345-52, 679; Doc. 10-2 at 324; Doc. 10-3 at 54, 58-63, 234; Doc. 10-5 at 213; Doc. 10-6 at 463; Doc. 10-7 at 140-47, 217, 338; Doc. 10-8 at 23-24; Doc. 10-10 at 105; Doc. 10-11 at 59. However, during several physical examinations between 2020 and 2023, the medical records noted Claimant's posture, gait, musculoskeletal range of motion, and pain levels were normal and gave no indication of Claimant's use of any assistive devices. Doc. 10-1 at 457, 474, 537; Doc. 10-2 at 433; Doc. 10-3 at 18, 149, 222; Doc. 10-4 at 220, 223, 231; Doc. 10-5 at 235, 255-56, 278, 301, 322, 377; Doc. 10-6 at 119-20, 315; Doc. 10-7 at 250-69, 278, 292-94; Doc. 10-9 at 96-99; Doc. 10-10 at 1-2, 83, 94; Doc. 10-11 at 1, 12, 137, 294, 318-20, 800. Moreover, Claimant reported that she worked at McDonald's during the relevant period of review where, without indicating the use of any assistive device, she was "standing all day long." Doc. 10-4 at 220.

Claimant's mental health history includes her reports of anxiety, stress, and depression. Doc. 10-1 at 93-96, 98-99; Doc. 10-5 at 183, 210-13, 255; Doc. 10-6 at 123-24, 314; Doc. 10-7 at 217-20; Doc. 10-10 at 89. Claimant took medications, *inter alia*, including Paxil, Klonopin, and sleeping pills, to treat anxiety, personality disorder, depression, and sleep disorder. Doc. 10-1 at 94; Doc. 10-2 at 473; Doc. 10-4 at 220-21, 224, 233-34; Doc. 10-5 at 185; Doc. 10-7 at 218; Doc. 10-9 at 99; Doc. 10-10 at 2, 94-95, 102, 424, 799-800; Doc. 10-11 at 296-97. Claimant also alleged experiencing a panic attack at least once. Doc. 10-6 at 123-24. However, Claimant

testified that she did not actually have bipolar disorder, as it was a misdiagnosis.  Doc. 10-1 at 94.  Further, some evidence suggests heavy alcohol use, while other evidence demonstrates a reduced amount of alcohol consumption or none.  Doc. 10-1 at 91-93;  Doc. 10-5 at 275-77, 318-20, 326, 399; Doc. 10-6 at 337; Doc. 10-7 at 332-33.  Overall objective medical evidence suggests that Claimant had only mild and moderate problems with anxiety and even lesser issues with depression.  Doc. 10-1 at 457, 478, 540; Doc. 10-2 at 432, 597; Doc. 10-3 at 17, 221, 247; Doc. 10-4 at 231-33; Doc. 10-5 at 235, 255; Doc. 10-6 at 433; Doc. 10-7 at 118; Doc. 10-10 at 104, 110, 113; Doc. 10-11 at 355.

Additionally, Claimant suggested during her testimony at the administrative hearing that she cannot work regularly and on a continuing basis due to frequent hospitalizations.  Doc. 10-1 at 87-92.  The medical records reflect a total of four hospitalizations from June 2022 to December 2022.  Doc. 10-1 at 39-40.

The record also contains findings of various state agency medical consultants ("SAMCs"), none of whom considered medical evidence submitted after March 10, 2023.  Doc. 13 at 13.  As to Claimant's physical impairments, SAMCs Larry Wilson, MD, and Bradley Stephan, MD, stated that she "can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently and sit (with normal breaks) for a total of 6 hours in an 8-hour workday" but that she "is limited to standing and/or walking for a total of 4 hours (in an 8-hour workday)." Doc. 10-1 at 40; *see also* Doc. 10-1 at 40-41 (finding some of Dr. Wilson's and Dr. Stephan's statements persuasive and some unpersuasive).  As to Claimant's mental impairments, Evelyn F. Adamo, PhD, and Jesse Sadovnik, PsyD, stated that Claimant "can understand, remember, and carry out detailed but not complex instructions, attend and concentrate, accept instructions, interact with others, respond to changes in a routine work setting, and . . . retains the capacity to

sustain detailed work at an acceptable pace." Doc. 10-1 at 41; *see also* Doc. 10-1 at 41-42

(finding some of Dr. Sadovnik's limitation assessments unpersuasive).

### C. The ALJ's Findings

On February 28, 2024, an administrative law judge ("ALJ") found that Claimant was not

disabled after engaging in the requisite five-step analysis under the Act. Doc. 10-1 at 45.

Specifically, the ALJ found at steps one and two that Claimant had not engaged in substantial

gainful activity since her alleged onset date and had the severe physical and mental impairments

of (1) fatty liver; (2) chronic pancreatitis; (3) rectal prolapse status post sigmoid resection with

primary colorectal anastomosis, rectopexy, and omental flat; (4) chronic obstructive pulmonary

disease; (5) major depressive disorder; (6) generalized anxiety disorder; (7) bipolar disorder; (8)

personality disorder; and (9) and chronic alcohol abuse. Doc. 10-1 at 31. As for Claimant's

mental impairments, the ALJ found ALJ found that Claimant had the severe mental impairments

of major depressive disorder, generalized anxiety disorder, bipolar disorder, personality disorder,

and chronic alcohol abuse. Doc. 10-1 at 31.

At step 3, the ALJ analyzed the severity of Claimant's impairments pursuant to the

"paragraph B" criteria and whether they meet or are medically equal in severity to the listings in

20 C.F.R. Part 404, Subpart P, Appendix 1. Doc. 10-1 at 32, 34. In doing so, the ALJ found that

Claimant had moderate limitations in her ability to: (1) understand, remember, or apply

information; (2) concentrate, persist, or maintain pace; and (3) adapt and manage herself. Doc.

10-1 at 32-34. The ALJ further found that Claimant had a mild limitation in interacting with

others. Doc. 10-1 at 33. Nevertheless, the ALJ concluded that "[b]ecause the claimant's mental

impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the

'paragraph B' criteria [we]re not satisfied." Doc. 10-1 at 34. Accordingly, "the severity of the

claimant's medical impairments, considered singly and in combination, d[id] not meet or medically equal the criteria listings of 12.04, 12.06, and 12.08." Doc. 10-1 at 33.

The ALJ thus determined that Claimant had the residual functional capacity ("RFC") to perform light work, subject to certain limitations, including that "the claimant can stand and/or walk for 4 hours and sit for 6 hours of an 8-hour day . . . ," and "[t]he claimant can never work in environments with exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin." Doc. 10-1 at 35. As for mental functional limitations, the ALJ found that "[t]he claimant can understand, remember, and carry out detailed but not complex instructions, and the claimant can deal with frequent changes in a routine work setting." Doc. 10-1 at 35.

Next, at step four, based on Claimant's RFC findings and the vocational expert ("VE") testimony, the ALJ found that Claimant was unable to perform any of her relevant past work. Doc. 10-1 at 43. At step five, however, based on the same RFC, the ALJ determined that there were other jobs in significant numbers in the national economy that Claimant can perform and, thus, Claimant was not disabled. Doc. 10-1 at 44-45.

## II. STANDARD OF REVIEW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work;

and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). If Plaintiff is successful, the burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (cleaned up). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS

Plaintiff argues that the ALJ erred by making an RFC finding that was inconsistent with her finding of a severe mental impairment. Doc. 13 at 7-12. Plaintiff also argues that the ALJ failed to develop the record and relied instead on her lay opinion in finding Claimant not disabled. Doc. 13 at 12-16. Upon review, Plaintiff's arguments fail.

### A. The ALJ's Assessment of Claimant's RFC Is Not Inconsistent with the Severe Mental Impairment Finding.

Related to Claimant's mental impairments, the ALJ's RFC findings included that "[t]he claimant can understand, remember, and carry out *detailed but not complex instructions*, and the claimant can deal with frequent changes in a routine work setting." Doc. 10-1 at 35 (emphasis

added).  Plaintiff argues that the presence of a severe mental impairment necessarily means that

the claimant's ability to perform "basic work activities" is "significantly" limited.  Doc. 13 at 8

(citing 20 C.F.R. §§ 404.1522(a), 416.922(a) (providing that a mental impairment is only severe

if it "significantly limits the claimant's ability "to do basic work activities")).  Plaintiff thus

reasons that the ALJ committed legal error in finding that Claimant had *severe* mental

impairments, which necessarily placed *moderate* limitations in all categories of her mental

abilities, yet failing to conclude that as a consequence, there were limitations on Claimant's

ability to understand, carry out, and remember even *simple* tasks.  Doc. 13 at 8-10.  Put

differently, Plaintiff argues that these findings were inconsistent with the RFC ultimately reached

by the ALJ because the ALJ failed to incorporate Claimant's *moderate* limitations due to her

*severe* mental impairments into the functional limitations in the RFC.  Doc. 13 at 10.  The

Court's review, however, reveals that Plaintiff obviously misapprehends and conflates the

applicable standards.

   "[A] finding that a claimant has a severe impairment at step two is different from the

ALJ's assessment of the claimant's RFC."  *Roberts v. Comm'r of Soc. Sec.*, No. 4:24-CV-930-

BP, 2025 WL 1268116, at *3 (N.D. Tex. May 1, 2025) (Ray, J.) (citing *Boyd v. Apfel*, 239 F.3d

698, 706 (5th Cir. 2001)); *see also Buescher v. Comm'r, Soc. Sec. Admin.*, 2025 WL 1931948, at

*11 (N.D. Tex. July 14, 2025) (Cureton, J.) (rejecting the claimant's argument that the ALJ,

upon finding a severe mental impairment at step two, contradicts an RFC assessment that the

claimant can perform work involving complex instructions) (collecting cases).  "It is true that

'the regulations require the ALJ to evaluate the limitations imposed by Claimant's mental

impairments in certain areas and direct the ALJ to proceed to the RFC determination if

Claimant's impairments are found severe.'"  *Roberts*, 2025 WL 1268116, at *4 (quoting

*Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009) (Lane, J.)) (cleaned up). But an ALJ's assessment of the paragraph B criteria resulting in moderate limitations in four broad categories of the claimant's mental abilities is not equivalent to an RFC assessment by the ALJ. SSR 96-8p, 1996 WL 374184, at *4. "Instead, it rates the severity of [the claimant]'s mental impairments at steps two and three of the sequential evaluation process." *Roberts*, 2025 WL 1268116, at *4.

"The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments . . . ." SSR 96-8p, 1996 WL 374184, at *4. These functions consider the claimant's abilities to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). However, the regulations "do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into the RFC determination." *Roberts*, 2025 WL 1268116, at *3 (quoting *Patterson*, 2009 WL 3110205, at *5).

Based on the record before the Court, the ALJ's RFC determination limiting Claimant to the performance of "detailed but not complex instructions" is not inconsistent with the ALJ's "special technique" evaluation that Claimant was moderately limited in her abilities in three categories: (1) understanding, remembering, or applying information; (2) concentrating, persisting, or maintaining pace; and (3) adapting and managing herself. Doc. 10-1 at 32-35; *see Julie H. v. Kijakazi*, No. 1:22-CV-145-H-BU, 2023 WL 8183822, at *5 (N.D. Tex. Nov. 27, 2023) (Hendrix, J.) (affirming the ALJ's determination that Claimant could perform "detailed,

but not complex tasks" and semi-skilled work despite moderate mental limitations); *Roberts*, 2025 WL 1268116, at *3-4 (finding that ALJ properly considered the plaintiff's mental limitations in RFC determination and reiterating that a finding of a severe impairment at step two is distinct from the ALJ's RFC assessment).  Further, the ALJ's FCR determination is supported by substantial evidence as the ALJ "properly discussed the evidence in the record in making [the] RFC determination, explained [the] reasoning for the RFC determination, and exercised [ ] responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC that the record most supported."  *Buescher*, 2025 WL 1931948, at *12; Doc. 13 at 8-10 (explaining the ALJ's finding of Claimant's moderate mental limitations and basis for RFC determination).

Finally, as Defendant correctly notes, Plaintiff does not cite any legal authority requiring remand under analogous circumstances.  Doc. 19 at 7.  Indeed, Plaintiff's argument has been repeatedly rejected by this Court.  *See, e.g.*, *Julie H.*, 2023 WL 8183822, at *5 ("A finding that the plaintiff has a severe impairment does not prevent a finding that the plaintiff can also complete unskilled and semi-skilled work."); *Roberts*, 2025 WL 1268116, at *5 (collecting cases and finding that the ALJ properly accounted for the plaintiff's mental limitations); *Buescher*, 2025 WL 1931948, at *8-12 (same); *James S. v. Dudek*, No. 4:24-CV-000588-BU, 2025 WL 1869440, at *3-5 (N.D. Tex. July 7, 2025) (Parker, J.) (same).

## B.  The ALJ's Assessment of Claimant's RFC Is Supported by Substantial Evidence.

Remand is also not required as to Plaintiff's second claim that the ALJ failed to develop the record and relied instead on her lay opinion in finding Claimant not disabled.  Doc. 13 at 12-16.  As Defendant correctly counters, the ALJ's assessment of Claimant's RFC is supported by substantial evidence.  Doc. 19 at 8-10.

The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c),

416.946(c); *see Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam) (holding

that the RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts

in the evidence). Under the current regulations, ALJs do "not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Nor must an ALJ's

RFC assessment "mirror or match a medical opinion." *Robert D.D. v. Kijakazi*, No. 3:21-CV-

3164-C-BN, 2022 WL 16935248, at *4 (N.D. Tex. Oct. 31, 2022) (Horan, J.) (cleaned up),

*adopted by* 2022 WL 16927799 (Nov. 14, 2022) (Cummings, J.). Further,

> [t]he ALJ has a duty to develop the facts fully and fairly relating to an applicant's
> claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not
> substantially justified. Reversal of his decision, however, is appropriate only if the
> applicant shows that he was prejudiced.

*Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

Moreover, the absence of a medical opinion "'describing the types of work that the

applicant is still capable of performing . . . does not, in itself, make the record incomplete.'"

*Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023) (per curiam)

(quoting *Ripley*, 67 F.3d at 557); *see also Myers v. Kijakazi*, No. 20-CV-445, 2021 WL 3012838,

at *4 (W.D. Tex. July 16, 2021), *adopted by* 2021 WL 4025993 (Sept. 3, 2021) (explaining that

the law does not require a positive statement or positive evidence from a medical source

indicating a claimant can perform the demands included in the RFC). Such opinions are simply

one category of evidence that the ALJ considers in assessing a claimant's RFC. *Id.* (citing 20

C.F.R. § 404.1513); *see* 20 C.F.R. § 416.913 (categories of evidence for Title XVI applications).

"[W]here no medical statement has been provided, [the Court's] inquiry focuses upon whether

the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.

Plaintiff's opening brief cites decisions of courts outside of this circuit as support for the argument that the ALJ fails to develop the record (and, thus, does not substantially justify her decision) if the medical opinions she evaluated were "provided prior to a significant development in the claimant's condition . . . ," and the ALJ does not order an updated medical consultative review. Doc. 13 at 12-15. That is not consistent with the law of this circuit, however. The Court of Appeals for the Fifth Circuit has held "that any *per se* rule is inappropriate . . . instead rely[ing] on the duty of an ALJ 'to develop the facts fully and fairly relating to an applicant's claim for disability benefits.'" *Wills*, 2023 WL 4015174, at *3 (quoting *Boyd*, 239 F.3d at 708); *see Webster*, 19 F.4th at 720 ("A consultative examination is required to develop a full and fair record only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.") (cleaned up).

Here, the ALJ thoroughly reviewed and considered the evidence in the record, including the SAMC opinions, various medical opinions, and updated evidence provided as to Claimant's condition after March 2023. *See* Doc. 10-1 at 35-43 (explaining that the ALJ considered the entire record, including medical opinions, prior administrative medical findings, and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and order evidence"). Further, the ALJ's detailed decision provided more than enough explanation "to allow the court to undertake a meaningful review of whether [her] reasoning was supported by substantial evidence." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *adopted by* 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021); *see also Price v. Astrue*, 401 F.

App'x 985, 986 (5th Cir. 2010) (per curiam) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.").

Further, Plaintiff points to no evidence supporting the conclusory claim that the ALJ "rel[ied] upon nothing more than the ALJ's own lay judgment in assessing the medical evidence of record." Doc. 13 at 12. Thus, although the SAMCs' medical opinions did not necessarily consider medical evidence submitted after March 2023, the ALJ explicitly considered it in making the RFC determination. Doc. 13 at 13; *see* Doc. 10-1 at 77 (explaining that the ALJ made a decision, independent of the Administration's previous unfavorable determinations, "that's based on all of the evidence before [the ALJ]. That evidence will include all documents entered into the record as well as the testimony at this hearing."); *see also* Doc. 10-1 at 106-08 (keeping the record open past the date of the administrative hearing to allow Claimant to provide further information).

Even assuming *arguendo* that the SAMC findings the ALJ relied upon were stale, Plaintiff fails to show that Claimant was prejudiced. *Ripley*, 67 F.3d at 557. Because the ALJ considered evidence provided after the SAMC reports and, accordingly, considered Claimants additional symptoms in imposing more restrictive limitations on Claimant's abilities than those suggested by some SAMCs, the record does not support a finding that Claimant was harmed Doc. 10-1 at 41, 43; Doc. 19 at 9. Again, "the applicable regulations support that the ALJ was entitled to find the administrative findings partially persuasive and then use those findings, together with other relevant record evidence, in making her RFC determination." *Wills*, 2023 WL 4015174, at *3 (citing 20 C.F.R. §§ 404.1520c, 404.1545(a)(3)).

Accordingly, the Court finds no procedural error and that the ALJ's he RFC assessment is supported by substantial evidence.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on August 29, 2025.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).